pus application relating to the conviction or sentence in the requested State.

Article 7bis(2) provides that the person surrendered pursuant to paragraph (1) must be kept in custody in the requesting State. It also provides that the person must be returned to the requested State within forty-five days after the conclusion of the proceedings for which the person's presence was required or at another time as specified by the requested State, in accordance with conditions determined by the Parties. This provision anticipates that authorities in the United States and Canada, which in some cases will include state-level authorities, will consult to determine appropriate conditions for the temporary surrender of an individual, including arrangements for the transfer and return of the prisoner, as well as any extraordinary matters that may be relevant, such as medical care requirements. Consistent with our normal extradition practice, any case-specific agreements or assurances relating to the temporary surrender would be concluded by the federal authorities on behalf of state authorities. Similar to the language in paragraph (1), Article 7bis(2) also provides that the transfer of the person back to the requested State will not divest the courts of the requesting State of jurisdiction over any appeal or habeas corpus application relating to the matter for which the prisoner was temporarily surrendered.

Article 7bis(3) provides that the time spent in custody in the requesting State may be credited to the sentence in the requested State. In the case of the United States, credit for time served by a person surrendered to Canadian authorities may differ among U.S. state and federal authorities.

Article 7bis(4) provides that the requested State can waive the return of the surrendered person in the event the person's sentence in the requested State expires during the temporary surrender period. Article 7bis(4) provides that in such cases the person's surrender shall be considered a "final surrender" under the Extradition Treaty.

Because temporary surrender is contingent on a grant of extradition, Article 7bis(5) provides that the requesting State does not have to make a further request for the extradition of a person who has been returned to the requested State after having been convicted and sentenced in the requesting State for the offense for which temporary surrender was granted.

Article 7bis(6) provides that a person who has been returned to the requested State, after having been convicted and sentenced during a temporary surrender, must be finally surrendered once the custodial portion of the person's sentence in the requested State has been completed or, if the requested State so specifies, at an earlier time. This provision contemplates that the requested State will finally surrender a person who has been released on parole or under other conditions. It also envisions that the requested State may choose to surrender the person at an earlier time.

Article 7bis(7) recognizes that there may be reasons not to proceed with final surrender even though the person was convicted and sentenced during a temporary surrender. Article 7bis(7)(a) provides that final surrender will not take place when the requesting State advises that it is no longer required because the sentence

VII

imposed in the requesting State has expired or for other reasons. Similarly, Article 7bis(7)(b) provides that the person will not be surrendered to the requesting State in the event the competent authority of the requested State revokes its original grant of extradition.

Article 2 of the Second Protocol will establish a new framework for the admissibility of documentary evidence in support of a request for extradition by replacing existing Article 10(2) of the Extradition Treaty.

Consistent with U.S. extradition law on the admissibility of documentation, new Article 10(2)(a) reiterates the existing requirement that, in the case of a request from Canada, documents be authenticated by an officer of the Department of Justice of Canada and certified by the principal diplomatic or consular office of the United States in Canada. Article 10(2)(b), however, changes existing requirements with respect to requests emanating from the United States, so as to take advantage of changes in Canadian law regarding the admissibility of extradition documents in Canadian courts. Specifically, Article 10(2)(b) eliminates the requirement that the United States have its documentary evidence in support of extradition requests to Canada authenticated by an officer of the U.S. Department of State and certified by the principal diplomatic or consular officer of Canada in the United States. Instead, Article 10(2)(b) streamlines the authentication process by allowing documents to be certified by a judicial authority or prosecutor who attests that the evidence is available for trial and is sufficient to justify prosecution under the law of the prosecuting jurisdiction. When the person whose extradition is sought has already been convicted, documents supporting the U.S. request are to be certified by a judicial, prosecuting or correctional authority who can attest to the fact that the documents are accurate. These changes should simplify and thereby reduce the administrative burden of processing extradition requests by the United States.

New Article 10(2)(c) provides an alternative to subparagraphs (a) and (b), by providing that documents may also be certified or authenticated in any other manner accepted by the law of the requested State. This addition will enable both countries to take advantage of any changes to their applicable laws.

Article 3 of the Second Protocol addresses the relationship between the Second Protocol and the Extradition Treaty. Paragraph (1) provides that the Second Protocol will form an integral part of the Extradition Treaty. Paragraph (2) provides for retroactivity, noting that, notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, the Second Protocol will apply in all cases where the request for extradition is made after its entry into force regardless of whether the offense was committed before or after that date. Finally, paragraph (3) provides that the Second Protocol is subject to ratification, and enters into force upon the exchange of instruments of ratification. The Second Protocol would terminate upon termination of the Extradition Treaty.

The Second Protocol does not require implementing legislation. A Technical Analysis explaining in detail the provisions of the Second Protocol is being prepared by the United States negotiating delegation, consisting of the Departments of State and Justice, and will

VIII

be submitted separately to the Senate Committee on Foreign Relations.

The Department of Justice joins the Department of State in favoring approval of this Second Protocol by the Senate at an early date.

Respectfully submitted,

COLIN L. POWELL.

SECOND PROTOCOL AMENDING THE TREATY ON EXTRADITION

BETWEEN

THE GOVERNMENT OF THE UNITED STATES OF AMERICA

AND

THE GOVERNEMENT OF CANADA

Signed at Washington on December 3, 1971,
as amended by an Exchange of Notes at Washington on June 28 and July 9, 1974,
and by a Protocol signed at Ottawa on January 11, 1988

THE GOVERNMENT OF THE UNITED STATES OF AMERICA AND THE GOVERNMENT OF CANADA (hereinafter "the Parties");

RECOGNIZING the close bilateral relationship which exists between them, reflected in numerous instruments and mechanisms of legal cooperation;

COMMITTED to strengthening legal cooperation in the fight against crime; and

DESIRING to make more effective the Extradition Treaty between the Parties, signed at Washington on December 3, 1971 (hereinafter "the Extradition Treaty"), as amended by an exchange of notes of June 28 and July 9, 1974, and the Protocol to the Extradition Treaty between the Parties, signed at Ottawa on January 11, 1988 (hereinafter "the Protocol");

HAVE AGREED as follows:

ARTICLE 1

The Extradition Treaty is amended by adding the following after Article 7:

"Article 7 bis

1. The requested State, after granting an extradition request made in accordance with the Extradition Treaty, may temporarily surrender a person who has been convicted and sentenced in the requested State, in order that the person sought may be prosecuted in the requesting State. The temporary surrender of the person shall not divest the Courts in the requested State of jurisdiction over any appeal or habeas corpus application relating to the conviction or sentence that otherwise may be available under the laws of the requested State.

(1)

2

2. A person temporarily surrendered pursuant to paragraph 1 shall be kept in custody in the requesting State. The person shall be returned to the requested State within forty-five (45) days after the conclusion of the proceedings for which the person's presence was required in the requesting State or at another time as specified by the requested State, in accordance with conditions to be determined by the Parties for that purpose. The return of the person to the requested State shall not divest the Courts in the requesting State of jurisdiction over any appeal or habeas corpus application that otherwise may be available under the laws of that State, in relation to the matter for which the person was temporarily surrendered.

3. The period of time spent in custody in the requesting State may be credited to the sentence in the requested State.

4. When the sentence that the person was serving in the requested State expires during the temporary surrender, the requested State may waive the return of the person and the surrender will be considered to be a final surrender. A "final surrender" is a surrender of a person pursuant to this Treaty other than as provided for by this Article.

5. Subject to paragraph 7, if a person temporarily surrendered and returned to the requested State has been sentenced to imprisonment in the requesting State for the offence for which the person was temporarily surrendered, the person shall be finally surrendered to the requesting State, in accordance with paragraph 6, without a further request for extradition.

6. Final surrender shall take place when the person has finished serving the custodial portion of the sentence in the requested State, or at an earlier time specified by the requested State.

7. Final surrender shall not take place when:

   (a) the requesting State advises that final surrender is no longer required due to the expiration of the sentence imposed or for other reasons; or

   (b) after the temporary surrender, the warrant or order for the final surrender of a person sought is revoked by the competent authority of the requested State."

## ARTICLE 2

Article 10(2) of the Extradition Treaty is deleted and replaced by the following text:

"(2) The documentary evidence in support of a request for extradition or copies of these documents shall be admitted in evidence in the examination of the request for extradition when:

   (a) in the case of a request emanating from Canada, they are authenticated by an officer of the Department of Justice of Canada and are certified by the principal diplomatic or consular officer of the United States in Canada;

3

(b) in the case of a request emanating from the United States for a person who is sought for prosecution, they are certified by a judicial authority or prosecutor who attests that the evidence is available for trial and is sufficient to justify prosecution under the law of the prosecuting jurisdiction. In the case of a request emanating from the United States for a person who is sought in connection with a conviction, the documents must be certified by a judicial, prosecuting or correctional authority who attests to the fact that the documents are accurate; or

(c) they are certified or authenticated in any other manner accepted by the law of the requested State."

## ARTICLE 3

1. This Second Protocol shall form an integral part of the Extradition Treaty.

2. Notwithstanding paragraph (2) of Article 18 of the Extradition Treaty, this Second Protocol shall apply in all cases where the request for extradition is made after its entry into force regardless of whether the offence was committed before or after that date.

3. This Second Protocol shall be subject to ratification, and shall enter into force upon the exchange of instruments of ratification. It shall terminate upon termination of the Extradition Treaty.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Second Protocol.

DONE in duplicate at Ottawa this Twelfth day of January 2001 in the English and French languages, the two texts being equally authentic.

FOR THE GOVERNMENT OF
THE UNITED STATES OF
AMERICA

FOR THE GOVERNMENT
OF CANADA